Newman, J.
Section 8998, General Code, requires a railroad company, whose tracks lie contiguous to sidetracks suitable for loading or unloading, to switch the cars of other railroad companies, at the request of such companies or shippers, over and upon the tracks so lying by such sidetracks, for the purpose of unloading freight into or from such sidetracks, without demurrage, for forty-eight hours. Section 9000 fixes the amounts which a railroad company owning such tracks lying contiguous to sidetracks and within the proper terminals of a city shall receive from the company whose cars are so switched, loaded or unloaded, at such sidetracks. For a distance over two and one-half miles and not exceeding five miles the maximum charge that may be made is $2 per car.
Plaintiff in error, claiming to be an aggrieved party within the meaning of Section 9002, predicates its right to recover the amount named in that section upon an alleged violation by defendant in error of the provisions of Section 9000 in charging $6 for what is alleged by it, plaintiff in error, to be a switching service, instead of $2, the maximum amount fixed by law for the switching of a car a distance not exceeding five miles. If the service rendered by defendant in error, as shown by the pleadings, was not a switching service, within the meaning of Section 9000, defendant in error is not liable under the provisions of Section 9002.
The court of common pleas in reaching its conclusion proceeded upon the theory that the transportation of the car of lumber was completed when *211 it reached the terminal limits of The Cleveland, Cincinnati, Chicago & St. Louis Railway Co. But was the court correct in this in view of the express allegations of the petition ? It is alleged that plaintiff caused the car of lumber to be transported over the road of The Cleveland, Cincinnati, Chicago & St. Louis Railway Co. from Fernbank to its siding in the city of Cincinnati, that it requested the shipment to be made to its switch, known as the “Doppes switch, Cincinnati, New Orleans & Texas Pacific Railway,” and that both of the railroad companies so transported it. , It is true plaintiff calls the service rendered by defendant in error a switching service. It is equally true that it is termed transportation service by defendant in error. But the nature and character of the service is to be determined from the facts regardless of the designation given it by the parties.
As we view it, the contract of carriage involved a transportation from Fernbank to Doppes switch, such a transportation as is provided for in Section 8999, which reads: “When the tracks of two companies are so connected, either, when required, shall transport over its road to its destination thereon, any freight offered, in cars in which it is offered, at its local rates per mile as set forth in its freight tariff for the distance most nearly corresponding, and return the cars, with or without freight or. unnecessary delay.”
In this case the destination of the car was Doppes switch, and the fact that Doppes switch and Fernbank, from which the shipment originated, are both within the terminal limits of Cincinnati is *212 immaterial. Mr. Justice McKenna, in Grand Trunk Ry. Co. v. Michigan Rd. Comm., 231 U. S., 457, in commenting on the decision of the United States court of appeals in the same case, uses the following language, which we think is in point here: “And it was remarked that the fact that freight movement begins and ends within the limits of a city does not take from it its character of ‘an actual transportation between two termini/ the other conditions obtaining. We concur in the conclusion of the court.” The United States court of appeals had held that a service does not cease to be a transportation merely because the movement begins and ends within a city, or is only between an intracity junction or teamtrack or sidetrack. 198 Fed. Rep., 1009.
In the present case the total amount charged for the shipment from Fernbank to Doppes switch was $13. As has been said by the interstate commerce commission, it is immaterial to the shipper how the carriers divide the charge provided it is reasonable. Whether or not it is reasonable in the case at hand is a matter with which we are not concerned, as plaintiff does not base its claim upon an excessive freight rate. It is to be presumed, however, that the railroad companies have followed the requirements of Section 512, General Code, and that the rate charged for the transportation of the freight over the connecting lines was reasonable.
In Dixon v. Central of Ga. Ry. Co., 110 Ga., 173, it is held: “A switching or transfer service is one which precedes or follows a transportation service, and applies only to a shipment on which legal *213 freight charges have already been earned, or are to be earned.” We approve and adopt this definition. .
In the Georgia case, the court, in illustrating what would be a switching or transfer service, say that if the shippers had ordered freight over the Central Railway to be shipped to Savannah from Macon, Ga., they would be liable for regular rates for transportation from that point to the railway terminal at Savannah; and the Central Railway Co., in shipping the freight from its depot over the spur-track to the shipper’s place of business, would simply be entitled to the rates fixed for such transfer service. Or, if the shippers desired the Central Railway Co. to transport freight from their place of business in Savannah to Macon, and the Central Railway Co. transported the goods over its spur-track from the shipper’s place of business to its depot, it could only charge additional, for this part of the transportation, simply the switching-service rate.
The court of common pleas did not seem to question the holding of the Georgia court, but was of the opinion that the rule announced there has no application here because of the fact that the transportation in the present case was completed when the car of the plaintiff reached its destination within the terminal limits of The Cleveland, Cincinnati, Chicago & St. Louis Railway Co. But, as we have said, the court was in error in this, for the car did not reach its destination under the contract of carriage until it was delivered at Doppes switch.
The word “switching” is synonymous with *214 “transferring.” We think that a switching service is rendered, within the meaning of Section 9000, when a car is transferred from a sidetrack, over the tracks of a railroad lying contiguous thereto, to the line of the company which is to have what is termed the “line haul,” or from the line of the company which has had the line haul, over the track of the company which delivers the freight, to the siding of the shipper. In such case the railroad company receiving the car from or delivering it to the company having the line haul would be limited in its charge to the amount fixed by statute for switching service.
We have no such case here. According to our view the movement of the car in question from Fernbank to Doppes switch was a transportation service for which a reasonable freight rate could be charged. The movement of the car by defendant in error was not incidental to the shipment as a whole, but was a part of it. Our holding is that the service rendered by the defendant in error was not a switching service, within the meaning of Section 9000, and therefore there could be no violation of its provisions. In view of this holding it is unnecessary to consider the other questions raised by counsel for defendant in error.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Jones and Matthias, JJ., concur.